UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO ARRANGA BALLESTEROS,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN STEK, et al.,<br><br>Defendants. | Case No. 20-cv-06207-JSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; REFERRING CASE FOR MEDIATION PROCEEDINGS**<br><br>Re: Dkt. No. 14 |

**INTRODUCTION**

Plaintiff, a California prisoner proceeding pro se, filed this civil rights complaint under 42 U.S.C. § 1983 against the City of Santa Clara, California, and eight employees of the Santa Clara Police Department ("SCPD") for using excessive force during the course of his arrest. Defendants filed a motion for summary judgment.[1] Plaintiff filed an opposition, and Defendants filed a reply brief. For the reasons discussed below, the motion for summary judgment is GRANTED IN PART, and the case is referred to Magistrate Judge Illman and the Prisoner Mediation Program for mediation proceedings.

**DISCUSSION**

I.   Plaintiff's Allegations

Except where otherwise specified, the parties agree on the following facts.[2]

---

[1] All parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. (ECF Nos. 5, 13).
[2] The alleged facts in the Complaint that are within Plaintiff's knowledge may serve as evidence because the Complaint is verified. (ECF No. 1.) *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating verified complaint as affidavit opposing summary judgment where allegations were based on plaintiff's personal knowledge).

At approximately 8:00 p.m. on August 18, 2018,[3] Santa Clara Police Officer Boales (who is not a defendant) pulled over a car in which Plaintiff was a passenger. (ECF Nos. 1 at 6; 14-4 at 1-2.) When the driver stopped, Plaintiff got out and walked away; Officer Boales commanded him to stop, but Plaintiff recalled that there was a warrant for his arrest and continued to walk. (ECF Nos. 1 at 6-7; 14-4 at 2.) Boales states that he stayed with the car and called for backup, while Plaintiff alleges that an officer chased him with a gun pointed at him. (ECF Nos. 1 at 7; 14-4 at 2.) Plaintiff ran through a construction site on the campus of Santa Clara University and hid. (ECF No. 1 at 7.)

Defendants Officers Stephen Stek and Josh Higgins arrived in the area in patrol cars, and Plaintiff left his hiding spot and ran down the sidewalk. (*Id.*; ECF Nos. 14-3 at 2; 14-5 at 12.) Stek and Higgins saw Plaintiff running and told him to stop as they chased him, but he kept running. (ECF Nos. 1 at 7; 14-3 at 2-3; 14-5 at 12.) They state that Plaintiff had his hand near his waistband as he ran. (ECF Nos. 14-3 at 2-3; 14-5 at 12; 21 at 1-3.) Plaintiff ran behind a car, emerged, and lay face down on the sidewalk. (ECF Nos. 1 at 7; 14-3 at 2-3; 14-5 at 12.) According to Stek and Higgins, when they got closer to him, Plaintiff quickly sat up, and Higgins used his foot to push Plaintiff back down into a prone position. (ECF Nos. 14-3 at 3; 14-5 at 12-13.) Plaintiff does not agree insofar as he states that after lying down, he did not resist and told the officers he would comply with their orders. (ECF No. 1 at 7.)

While Plaintiff was face down on the ground, Higgins pulled Plaintiff's left arm behind his back, and Stek pinned Plaintiff's other hand above his head. (ECF Nos. 14-3 at 3; 14-5 at 13.) Higgins, who weighed 275 pounds, states that he knelt on Plaintiff's legs, while Plaintiff, who weighed 170 pounds, states that Higgins knelt on his back, which made breathing difficult. (ECF Nos. 1 at 7; 14-5 at 13; 21 at 3.) Stek pushed Plaintiff's face into the ground. (ECF Nos. 1 at 7; 14-5 at 13.) Plaintiff states that Stek hit him with his gun five to seven times on the side of his head, while Stek states that he hit Plaintiff with the flashlight on his gun and then hit him in the

---

[3] In his Complaint, Plaintiff alleges that these events took place on August 19, 2018, (ECF No. 1 at 6), but he does not dispute the police reports and declarations submitted by Defendants in support of their motion for summary judgment showing that the date was August 18, 2018 (ECF Nos. 14-3, 14-4, 14-5).

face five times with his open palm.  (ECF Nos. 1 at 7; 14-3 at 3-4.)  According to Stek and Wiggins, they found a folding knife in Plaintiff's wallet, and Higgins threw it out of reach.  (ECF Nos. 14-3 at 4; 14-5 at 13.)  Higgins kneed Plaintiff twice in the back and punched him three times in the stomach.  (ECF Nos. 1 at 7; 14-5 at 13.)  The parties agree that Plaintiff said that he would comply with the officers and cooperate, but they disagree about whether he actually did cooperate.  (ECF Nos. 1 at 7; 14-3 at 3; 14-5 at 13.)  Stek and Higgins state that Plaintiff resisted, that he thrashed" his body violently, tensed his muscles, repeatedly pulled his hands and arms away from their grasp, and at one point got up to his knees.  (ECF Nos. 14-3 at 2-4; 14-5 at 12-13.)  Plaintiff denies resisting except to the extent he needed to breathe and asserts that he was "passive" throughout his encounter with the officers  (ECF Nos. 1 at 7-8; 21 at 1.)

Two other police officers, Defendants Patrick Gacayan and Anthony Pianto, arrived while Plaintiff was on the ground with Stek and Higgins.  (ECF Nos. 1 at 7; 14-3 at 4.)  Gacayan and Pianto assert that they told Plaintiff to stop resisting, but he continued to resist and "nearly escaped."  (ECF Nos. 14-3 at 4; 14-5 at 13; 16-17, 19.)  Plaintiff states that the officers did not give any verbal commands to him, and they beat him without saying anything.  (ECF Nos. 1 at 7-8; 21 at 2.)  Gacayan punched Plaintiff in the ribs and took Plaintiff's left wrist into a "rear wrist lock position."  (ECF No. 14-5 at 17.)  Pianto punched Plaintiff in the shoulder and put Plaintiff's right arm behind his back.  (*Id.* at 19.)  Pianto states that Plaintiff resisted extensively and fought against him and the other officers.  (ECF Nos. 1 at 8; 14-5 at 19.)  While he was bending Plaintiff's right arm back, Pianto heard a crack at Plaintiff's right elbow, and Plaintiff felt "excruciating pain" and lost consciousness.  (*Id.*)  Plaintiff eventually received stitches, had to drain his ear multiple times, and was found to have a broken.  (ECF Nos. 1 at 7; 21 at 2.)

Defendants Officers Nathalie Zavala and Kenneth Nagata arrived at the scene after Higgins, Stek, Pianto, and Gacayan.  (ECF Nos. 14-3 at 4-5; 14-5 at 22, 25.)  They state that Plaintiff was resisting the officers, and that Zavala and Nagata held and sat on Plaintiff's legs.  (ECF No. 14-5 at 22, 25.)  Defendant Officer Daniels arrived and handcuffed Plaintiff while the other officers restrained him.  (*Id.* at 23.)  After Plaintiff was subdued and in handcuffs, Defendant Officer Vandiemen arrived and controlled Plaintiff's hands and head while Plaintiff was searched.

3

1  (ECF No. 14-3 at 5.)  Defendant Officer Jeff Burns also arrived at the scene, maintained a

2  perimeter post, and searched the surrounding area; he had no contact with Plaintiff.  (*Id.*)

3  Defendant Sergeant Cory Morgan, a supervisor in the SCPD, arrived at the scene later.  (*Id.*)

4  Plaintiff was charged in superior court with resisting or deterring an officer with the use of

5  force, in violation of California Penal Code Section 69, with respect to his actions towards Stek

6  and Higgins.  (ECF No. 14-7 at 2.)  He pled no contest to a misdemeanor violation of the statute,

7  and he was sentenced to 364 days in jail.  (ECF Nos. 14-8, 14-9.)

**DISCUSSION**

I. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  *Id.*  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins.  *Id.*

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party.  *Tolan v. Cotton*, 572 U.S. 650, 652 (2014).  If more than one reasonable inference can be drawn from undisputed facts, the trial court must credit the inference in favor of the nonmoving party.  *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

//

//

II.     Analysis

     1.      *Heck* bar

Plaintiff claims that Defendants Officers Stek, Higgins, Pianto, Gacayan, Zavala, Nagata, Vandiemen, and Burns used excessive force during the course of his arrest. Excessive force claims which arise in the context of an arrest or investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

Defendants argue that Plaintiff's excessive force claims are barred because success on them would necessarily imply the invalidity of his conviction for resisting arrest. To recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 42 U.S.C. § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994). A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. *Id.* at 487.

When a state prisoner seeks damages in a § 1983 suit, the district court must therefore consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id*. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed. *Id.*

A conviction for resisting arrest may bar claims under Section 1983 for excessive force during the course of arrest because under California law, the resisting arrest conviction may be lawfully obtained only if the officers do not use excessive force in the course of making that arrest. *See Smith v. City of Hemet*, 394 F.3d 689, 695-96 (9th Cir. 2005) (en banc) (citing *People v. Olguin*, 119 Cal.App.3d 39, 45-46 (1981)). The plaintiff's conviction in *Smith* was for resisting a

5

"peace officer" under California Penal Code Section 148(a), *see id.* at 695, whereas here Plaintiff was convicted of resisting an "executive officer" under California Penal Code Section 69. This distinction does not matter for the *Heck* analysis, however, because both Penal Code provisions require the officer's lawful action, including the use of non-excessive force. *See People v. Sibrian*, 3 Cal.App.5th 127, 133 (2016) (addressing Cal. Pen. Code § 69).

A California conviction for resisting arrest precludes, under *Heck*, a Section 1983 claim of excessive force during that arrest if the state court record for the conviction "contains factual circumstances that support the underlying conviction." *Lemos v. County of Sonoma*, 5 F.4th 979, 986-87 (9th Cir. 2021). This is true whether the conviction was obtained by jury verdict, as in *Smith*, or by a guilty plea, as in this case: "[S]o long as evidentiary support for the [resisting arrest] conviction exists in the record, plea agreements, just like guilty jury verdicts, may establish the criminal defendant's resistance toward the officers and the officer's lawful conduct in response." *Id.* at 985 (resisting an executive officer from performing the office's lawful duty).

Here, the state court record contains factual support for Plaintiff's conviction for resisting arrest as to Defendants Stek and Higgins. The criminal complaint charges him with violating California Penal Code Section 69(a) by using "force and violence" to resist Stek and Higgins in their performance of a "duty imposed by law." (ECF No. 14-7.) The change of plea form indicates that the state court found a factual basis for Plaintiff's nolo contendere plea to that charge. (ECF No. 14-8.) Thus, the state court record contains evidentiary support for the conviction under Section 69, which means, as a matter of California law, that Stek and Higgins acted lawfully and did not use excessive force when Plaintiff resisted them and that resistance was the basis for his conviction.

However, Plaintiff's resisting arrest conviction does not establish that Stek and Higgins were acting lawfully *throughout their entire encounter with Plaintiff*. "[A] valid § 148(a)(1) conviction does not necessarily implicate the lawfulness of the officer's conduct throughout the entirety of his encounter with the arrestee. [] Simply put, a conviction under § 148(a)(1) is valid only when 'the officer was acting lawfully *at the time the offense against the officer was committed*.'" *Lemos*, 5 F.4th at 986 (quoting *People v. Williams*, 26 Cal.App.5th 71, 82, (2018))

(emphasis added in *Lemos*). Defendants bear the burden of showing that Plaintiff's conviction applies to every alleged act of excessive force alleged by Plaintiff and thus that his success on his Section 1983 claim would necessarily imply the invalidity of his conviction under *Heck*. *See Sanford v. Motts*, 258 F.3d 1117, 1119 (9th Cir. 2001); *Smith*, 394 F.3d at 699 n.5.

Stek and Higgins have not met their burden here. The state court record merely shows that there was a factual basis for Plaintiff's nolo contendere plea to the charge of resisting arrest by Stek and Higgins. "[W]here a § 1983 plaintiff has pled guilty or entered a plea of nolo contendere[] it is *not* necessarily the case that the factual basis for his conviction included the whole course of his conduct. In the case of a guilty plea or plea of nolo contendere, as the dissent acknowledges, a defendant is free to admit having committed a specific act or acts of resistance, delay, or obstruction, to identify the particular acts of unlawfulness to which he is willing to plead, and to deny that he engaged in other specific acts." *Smith*, 394 F.3d at 699 n.5. Plaintiff's nolo contendere plea does not, by itself, establish that Plaintiff's entire course of conduct amounted to resistance, or correspondingly that all of the acts of force by Stek and Higgins were lawful. Defendants do not provide any state court record indicating the act or acts of resistance or which points in their encounter are the basis for Plaintiff's conviction. Consequently, Defendants have not shown which of the numerous acts of alleged force by Stek and Higgins are necessarily encompassed by his plea and therefore have not shown that *Heck* bars Plaintiff's claim that Stek and Higgins used excessive force against him at some point in their encounter.

Defendants have also not shown that the claims against the other Defendants are barred by *Heck*. The record is clear that Plaintiff was only charged with and convicted of resisting Stek and Higgins. Therefore, there is no state court conviction that would be called into question if Plaintiff succeeded on his Section 1983 claim that the other Defendants' use of force, which were separate from the use of force by Stek and Higgins, were excessive under the Fourth Amendment.

Accordingly, Defendants are not entitled to summary judgment under *Heck*.

2. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an

7

actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Regarding the first prong, the threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The constitutional right implicated by Plaintiff's claim of excessive force during his arrest is the Fourth Amendment right to be free from unreasonable searches and seizures. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Such claims are analyzed under the Fourth Amendment reasonableness standard, which requires balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. In the Ninth Circuit, evaluation of an excessive force claim under *Graham* involves three steps: (1) assessment of the severity of the intrusion on Fourth Amendment rights by evaluating the type and amount of force used; (2) evaluation of the government's interest in the use of force; and (3) balancing the gravity of the intrusion on the individual with the government's need for the intrusion. *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011). To evaluate the state's interests at stake, the court should consider (1) how severe the crime at issue was, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight, with the second factor the most important. *Rice v. Morehouse*, 989 F.3d 1112, 1123 (9th Cir. 2021).

Regarding the second prong of the qualified immunity analysis, "a right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (internal quotations omitted). The inquiry of whether a constitutional right was clearly established must be undertaken in light of the "specific context" of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202. If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. *Id.* A plaintiff need not identify a case that is "directly on point," but "existing precedent must have

8

1     placed the statutory or constitutional question beyond debate." *Evans v. Skolnik*, 997 F.3d 1060,
2     1066 (9th Cir. 2021).
3          On the issue of excessive force, the reasonableness of the officer's belief as to the
4     appropriate level of force should be judged from an "on-scene" perspective. *Saucier*, 533 U.S. at
5     205 (citing *Graham*, 490 U.S. at 396). If an officer reasonably, but mistakenly, believed that a
6     suspect was likely to fight back, for example, the officer would be justified in using more force
7     than in fact was needed. *Id.*

        a.     <u>Officers Stek, Higgins, Pianto, and Gacayan</u>

9     Plaintiff has satisfied the first prong of the qualified immunity analysis because the
10    evidence, when viewed in a light most favorable him, establishes that Defendants Stek, Higgins,
11    Pianto, and Gacayan used excessive force in violation of the Fourth Amendment. There was no
12    suspicion or indication that Plaintiff had committed a serious or violent crime. He voluntarily lay
13    himself face down on the ground when Stek and Higgins got close, and by word and action
14    showed that he would comply and cooperate. Stek pinned one arm above Plaintiff's head and
15    pushed his face into the ground, while Higgins bent the other arm bent behind his back. Plaintiff
16    remained passive except when Higgins, who weighed 275 pounds, knelt on his back, and Plaintiff
17    could not breathe. Even then, he resisted only enough to be able to breathe. Even if, as Higgins
18    and Stek assert, Plaintiff did have a folding knife in his waistband, he never took it out or
19    threatened to use it, and Higgins threw the knife out of reach. Under those circumstances, only a
20    small amount of force would be required to handcuff Plaintiff, but Stek hit Plaintiff in the head
21    five to seven times with a gun, causing a gash that required stitches. Higgins also used far more
22    than a small amount of force insofar as he punched Plaintiff in the stomach three times and kneed
23    him in the back two times.
24    Pianto and Gacayan, who arrived later, also used far more force than necessary. The
25    Fourth Amendment requires police officers to independently evaluate a situation when they arrive
26    on the scene, if they have the opportunity to do so, and their failure to consider reasonable and less
27    intrusive alternatives to the force employed weighs against finding that the use of force was
28    reasonable. *Rice*, 989 F.3d at 1124. When Pianto and Gacayan arrived, Plaintiff was face-down

1    on the ground, the folding-knife had been discarded and there were no reasonable indications to
2    them that Plaintiff was armed, and a 275-pound Higgins was kneeling on him. Stek was also
3    holding him down and had hit him multiple times in the head with his gun, Higgins had kneed him
4    in the back and punched him in the stomach, and he was bleeding from his ear.  Nevertheless,
5    Pianto and Gacayan each punched him, and Pianto broke Plaintiff's right arm while bending it
6    behind his back.  Under the first prong of the qualified immunity analysis, Plaintiff's evidence, if
7    true, establishes that Stek, Higgins, Pianto, and Gacayan violated Plaintiff's constitutional rights.

8    Under qualified immunity's second prong, moreover, the law was clearly established
9    insofar that it would be clear to any reasonable officer Stek, Higgins, Pianto, and Gacayan used
10   more force than allowed under the Fourth Amendment.  In *Rice*, the two officers took down a
11   suspect in handcuffs who engaged in "passive resistance" and stated he would cooperate, and once
12   on the ground, they engaged in a "scrum" where the officers struck and kneed him multiple times
13   and twisted his fingers. *Id.* at 1117-18.  The district court denied qualified immunity to the
14   officers for their conduct in the scrum but granted them such immunity for taking the suspect to
15   the ground. *Id.* at 1118.  On appeal, the Ninth Circuit denied qualified immunity for the take-
16   down as well because it was a "substantial force" whose unlawfulness against a passively resisting
17   person was "beyond debate." *Id.* at 1126.  The denial of qualified immunity was based on a
18   review of clearly established law as of 2011 about the lawful amount of force that could be used
19   on a passive suspect:

> Long before Rice's arrest, we clearly established one's "right to be free from the application of non-trivial force for engaging in mere passive resistance." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013); *see also Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012) (explaining that cases dating back to 2001 established that "a failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force"). In *Gravelet-Blondin*, we held that an officer's tasing of a bystander to an arrest who did not retreat despite the officer's orders violated clearly established law. 728 F.3d at 1092–96. Because the plaintiff did not make any threats or resist the officer, under our case law, "the use of non-trivial force *of any kind* was unreasonable." *Id.* at 1094 (emphasis added).
>
> In *Gravelet-Blondin*, we discussed two cases that clearly established the right to be free from any kind of non-trivial force

10

> where the plaintiff either did not resist or only passively resisted the officer. We cited *Deorle* [*v. Rutherford*], in which we denied qualified immunity to an officer who shot a beanbag projectile at a suicidal and irrational individual who followed the officer's instructions to put down his crossbow but who then walked towards the officer at a steady gait. [272 F.3d 1272, 1277, 1281 (9th Cir. 2001)]. We also cited *Headwaters Forest Defense v. County of Humboldt*, where we considered the use of pepper spray to subdue, remove, or arrest nonviolent protesters and held that "[t]he law regarding a police officer's use of force against a passive individual was sufficiently clear" in 1997 to put officers on notice that such force was excessive. 276 F.3d 1125, 1131 (9th Cir. 2002). Both cases bear on Morehouse's and Shaffer's conduct towards Rice, who, taking his version of the incident as true, was at most passively resistant.
>
> Similarly, in *Nelson*, we cited several cases that held that non-trivial force was not justified in the face of passive or even minimal resistance. 685 F.3d at 881–82. In *Young v. County of Los Angeles*, for example, we denied qualified immunity to an officer who physically struck and used pepper spray against an arrestee who refused to reenter his vehicle, 655 F.3d 1156, 1158 (9th Cir. 2011), holding that "[t]he principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest" was well established long before 2007. *Id.* at 1168. Similarly, as discussed, in *Bryan*, we held that it was excessive for an officer to use a taser against a person who, although shouting gibberish, hitting himself, and disobeying the officer's instructions to reenter his car, was otherwise non-resistant. 630 F.3d 805.
>
> Cases like *Deorle*, *Headwaters*, *Young*, and *Bryan*—as summarized in *Gravelet-Blondin* and *Nelson*—sufficiently established the law before Rice's arrest in 2011. These cases form a "body of relevant case law" that together place Morehouse's and Shaffer's use of substantial force against a passively resisting person "beyond debate." *Emmons*, 139 S. Ct. at 504.

989 F.3d at 1124-26.[4]

Like the suspect in *Rice*, Plaintiff was passive. To be sure, he admits to offering minimal resistance insofar as it was just enough resistance to allow him to breathe when Higgins knelt on his back. But even with that resistance, Stek, Higgins, Pianto, and Gacayan used so much more

---

[4] The court distinguished *Emmons v. City of Escondido*, 921 F.3d 1172, 1175 (9th Cir. 2019)*,* because in that case the plaintiff was suspected of a violent crime and was attempting to flee when the officers tackled him, which were "critical" factors that had been emphasized by the Supreme Court in its remand decision. *Rice*, 989 F.3d at 1127 (citing *City of Escondido v. Emmons*, 139 S.Ct. 500, 504 (2019); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013)). Neither factor is present here: Plaintiff had not been suspected of committing a violent crime, and although he had previously fled, he had stopped and voluntarily lay face down on the grounds when Stek and Higgins made first contact with him.

11

than a "non-trivial" amount of force than was used in *Rice* and the other cases cited therein that it was "beyond debate" that their conduct was unlawful (assuming the facts as alleged by Plaintiff as true). If it is "beyond debate" that an officer cannot lawfully take a passively resisting suspect to the ground, then it is certainly "beyond debate" that officers arresting a passive suspect --- even one who is offering just enough resistance to be able to breathe --- cannot repeatedly strike him in the head with a gun, punch him and knee him multiple times, or break his arm. Accordingly, qualified immunity must be denied to Defendants Stek, Higgins, Pianto, and Gacayan.

        b.    <u>Officers Zavala, Nagata, Vandiemen, and Burns, and Sergeant Morgan</u>

Plaintiff has failed to satisfy the first prong of the qualified immunity test with respect to the other individual Defendants. As explained above in *Rice*, the Fourth Amendment prohibits using a non-trivial amount of force on a suspect who is passively resisting, and it is clearly established that taking down such a suspect is non-trivial. 989 F.3d at 1124-27. The evidence, even when viewed in a light most favorable to Plaintiff, does not reasonably suggest that the Officer Daniels, Vandiemen, Burns, or Morgan used more than non-trivial force on him. The only thing that Daniels did was help apply handcuffs to Plaintiff. Vandiemen arrived after Plaintiff was already subdued and in handcuffs, and he simply held Plaintiff's hands and his head briefly while he was searched; there is no evidence that he did so in a manner that caused pain or injury. The evidence is undisputed that Defendant Burns simply searched the perimeter and never had any contact with Plaintiff. It is also undisputed that Sergeant Morgan never had any contact with Plaintiff and did not arrive at the scene until after the arrest and use of force was complete.[5] The only force used by Zavala and Nagata was restraining Plaintiff's legs, but there is no evidence that they did so in a manner that caused injury or pain. Under these circumstances, no reasonable fact-finder could conclude that any of these Defendants used anything more than a trivial amount of force against Plaintiff.

Even if this evidence amounted to a Fourth Amendment violation, such a violation was far from clearly established. This Court has been unable to find a case in which simply applying

---

[5] Plaintiff's allegation that Morgan helped the other officers falsify their reports is not supported by any evidence.

1  handcuffs to a suspect, holding his arms or head briefly while he or she searched, or restraining his
2  or her legs without causing pain or injury, was found to be more than trivial or otherwise
3  excessive force when arresting a passive suspect who was subdued or being subdued by other
4  officers.  As a result, it was not "beyond debate" that such actions violated Plaintiff's Fourth
5  Amendment rights, and these Defendants are entitled to qualified immunity based on a lack of
6  "clearly established law."  *See Emmons v. City of Escondido*, 921 F.3d 1172, 1175 (9th Cir. 2019)
7  (on remand from Supreme Court, Ninth Circuit held officer entitled to qualified immunity upon
8  being "unable to find a case so precisely on point with [Emmons's case] as to satisfy the
9  [Supreme] Court's demand for specificity").

### 3. City of Santa Clara

There is no evidence to hold the City of Santa Clara County liable under Section 1983 for the individual officers' use of force.  Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).  The policy or custom must be the "moving force" behind the constitutional violation.  *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).  There is no evidence of a custom of such violations in the City of Santa Clara or the existence of a departmental or city policy caused Defendants Stek, Higgins, Pianto, and Gacayan to use excessive force.  If any such custom or policy existed, moreover, there is no evidence that it was the "moving force" behind the Fourth Amendment violation.  Accordingly, the City of Santa Clara is entitled to summary judgment on Plaintiff's excessive force claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.  Summary judgment is granted to Defendants Zavala, Nagata, Daniels Vandieman, Burns, Morgan and the City of Santa Clara.  Summary judgment is denied to Defendants Stek, Higgins, Pianto, and Gacayan.

Prior to setting this case for trial, the Court finds good cause for the parties to attempt to resolve their dispute in mediation proceedings.  Accordingly, this case is REFRERRED to Magistrate Judge Illman pursuant to the Pro Se Prisoner Mediation Program.

1    The mediation proceedings shall take place within 120 days of the date this order is
2 entered.  Magistrate Judge Illman shall coordinate a time and date for a mediation proceeding with
3 all interested parties or their representatives and, within five days after the conclusion of the
4 mediation proceedings, file a report.  All mediation proceedings shall be confidential and no
5 statement made therein will be admissible in any proceedings in the case, unless the parties
6 otherwise agree.  No part of the mediation proceeding shall be reported, or otherwise recorded,
7 without the consent of the parties, except for any memorialization of a settlement.

8    All further proceedings in this case except those related to the mediation proceedings, as
9 ordered or permitted by Magistrate Judge Illman, are STAYED pending completion of the
10 mediation proceedings.

11    The clerk shall send a copy of this order to Magistrate Judge Robert Illman.

12    This Order disposes of Docket No. 14.

13    **IT IS SO ORDERED.**

14 Dated: December 28, 2021

*Jacqueline Scott Corley*
JACQUELINE SCOTT CORLEY
United States Magistrate Judge